[Civ. No. 29777. Fourth Dist., Div. Two. Nov. 3, 1983.]

MICHAEL HOWELL, Plaintiff and Respondent, v.
COUNTY OF SAN BERNARDINO et al., Defendants and Appellants.

COUNSEL

Alan K. Marks, County Counsel, and Ronald D. Reitz, Deputy County Counsel, for Defendants and Appellants.

Silver & Kreisler and Stephen H. Silver for Plaintiff and Respondent.

OPINION

RICKLES, J.—The County of San Bernardino and the Civil Service Commission of San Bernardino County, defendants in the court below, have appealed from a judgment granting a peremptory writ of mandate. The writ orders the commission to conduct a hearing to determine whether good cause exists to entertain an untimely request for administrative review of an employee reassignment. The issue on appeal is whether a good cause ex-

ception should be read into an administrative rule prescribing a five-day limit for requesting review of an employee reassignment.

## FACTS

Plaintiff Michael Howell was employed by the county as a sheriff's sergeant. Effective August 27, 1982, plaintiff was reassigned and transferred from the civil division to the Glen Helen jail facility.

Through an employee organization, plaintiff asked the commission to review his reassignment. The request was mailed by plaintiff's attorneys on September 14, 1982, and received by the commission on the following day. On October 1, 1982, plaintiff's attorneys mailed a second letter to the commission, in which they alleged the existence of a good cause excuse for plaintiff's failure to meet a five-day time limit set forth in the personnel rules of the County of San Bernardino. Plaintiff requested the commission to hold a hearing on the merits of his appeal or to hold a separate hearing on the preliminary issue of good cause.

The commission met on October 21, 1982, and heard oral argument on the matter, after which it determined it could not review plaintiff's reassignment. The commission did not make a finding on the existence of good cause, but instead decided it could not excuse untimeliness on a showing of good cause.

Following this decision, plaintiff filed a timely petition for writ of mandate under Code of Civil Procedure section 1085, naming the commission and the county as parties defendant. An answer was filed on behalf of both defendants, a hearing was held, and the matter was taken under submission. The trial court ruled in favor of plaintiff, holding that the untimeliness of plaintiff's request could be excused by a showing of good cause, and accordingly that the commission had erred in failing to determine whether good cause existed.

## I

In 1976, the Legislature enacted the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.). One provision of the act guarantees to every public safety officer an opportunity for administrative appeal of any "punitive action." (Gov. Code, § 3304, subd. (b).) Defendants do not dispute plaintiff's status as a public safety officer within the meaning of this provision, thereby conceding his right to administrative review of any "punitive action." The term "punitive action" is defined as "any action which may lead to dismissal, demotion, suspension, reduction in salary,

written reprimand, or transfer for purposes of punishment." (Gov. Code, § 3303. See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 141 [185 Cal.Rptr. 232, 649 P.2d 874]; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 679-684 [183 Cal.Rptr. 520, 646 P.2d 191].) The interpretation of these provisions is not in dispute here; plaintiff and defendants agree the right to have a transfer reviewed exists only where the transfer is "for purposes of punishment."

In his first letter to the commission, plaintiff alleged that his reassignment "was exclusively for disciplinary purposes." The county has denied this, alleging in its answer to the petition for writ of mandate that "no punitive action was taken against" plaintiff. No finding has been made on this disputed factual issue.

The County of San Bernardino has enacted personnel rules, the pertinent provision of which reads: "Reassignments are not subject to review or appeal except when used exclusively for disciplinary purposes. An employee alleging that a reassignment was exclusively for disciplinary purposes may appeal the reassignment action to the Civil Service Commission. The employee must file any such appeal request in writing with the Civil Service Commission within five (5) working days of notice of the reassignment." (Rule X, § 3, subd. (b), San Bernardino County personnel rules.)

Plaintiff has conceded he had notice of his reassignment by August 27, 1982, at the latest, and his request for review accordingly was at least two weeks late. According to plaintiff, the fault lies with his employee organization. He says he asked the employee organization to act on his behalf in challenging this reassignment, but his request was misplaced by the employee organization and not located until September 12, 1982, when it was forwarded to the attorneys for action. Plaintiff offered to produce evidence regarding the exact circumstances resulting in the late filing, but was never given an opportunity to do so. Instead, the commission ruled it had no authority to waive the five-day time limit of rule X upon a showing of good cause.

In support of his argument in favor of an implied good cause exception to the mandatory five-day time limit, plaintiff has relied primarily on *Gonzales* v. *State Personnel Bd.* (1977) 76 Cal.App.3d 364 [142 Cal.Rptr. 787]. In its notice of ruling, the trial court also relied extensively on *Gonzales.* To understand *Gonzales,* however, it is necessary to discuss two earlier cases.

*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494 [108 Cal.Rptr. 1, 509 P.2d 945], construed section 1328 of the Unemployment

Insurance Code, which established a 10-day limit for administrative appeal of a decision denying unemployment benefits, but also expressly provided that the 10-day period could be "extended for good cause." The Unemployment Insurance Appeals Board had adopted an interpretation of the provision under which errors of applicants or their attorneys, no matter how reasonable or excusable, could not constitute good cause. Our Supreme Court found this interpretation erroneous, basing its decision primarily on an analysis of the nature and objectives of the unemployment insurance program. The court concluded: "We find that the language and purpose of the Unemployment Insurance Code, and the judicial construction of its provisions, present a consistent picture—a remedial statute, liberally construed to carry out the state policy of aiding the unemployed worker, administered informally without resort to technicalities that might deprive the unsophisticated applicant of his right to benefits. In the face of this analysis we perceive no justification for a construction of section 1328 which limits 'good cause' for relief to exclude cases in which delay was attributable to excusable error of petitioner's counsel." (*Gibson* v. *Unemployment Ins. Appeals Bd.*, *supra,* at pp. 500-501.)

*Gibson* was followed by *Faulkner* v. *Public Employees' Retirement System* (1975) 47 Cal.App.3d 731 [121 Cal.Rptr. 190]. In that case, a police officer requested administrative review of a decision denying his application for disability retirement benefits. An administrative regulation (Cal. Admin. Code, tit. 2, § 555.1) established a 30-day period within which to file a written notice of appeal. The police officer's notice of appeal was filed four days late, but he presented evidence the delay was caused by the excusable neglect of his attorney. The appeals board refused to hear the appeal and the police officer sought a writ of mandate. The trial court denied the writ but its decision was reversed on appeal.

The *Faulkner* court relied heavily on *Gibson.* Like the statutory scheme examined in *Gibson,* the unemployment insurance provisions were subject to a rule of liberal construction, the court observed, and its objectives were inconsistent with strict enforcement of procedural rules to deny an applicant's right of appeal. Although *Gibson,* unlike *Faulkner,* involved a statute with an express "good cause" provision, the court in *Faulkner* found a regulation which it interpreted as the functional equivalent of a good cause provision. This regulation gave the executive officer discretionary power to refer a matter for hearing at any time, which the *Faulkner* court found to be inconsistent with "an iron-clad statute of limitations." (*Faulkner* v. *Public Employees' Retirement System, supra,* 47 Cal.App.3d 731, 736.) The court also cited certain provisions of the Tort Claims Act (i.e., Gov. Code, §§ 911.2, 911.4, 946.6) as evidence of a general "legislative attitude of liberality toward the rights of citizens to file late appeals." (*Ibid.*) The court

concluded: ". . . the absence in the state retirement system regulations of a specific provision enabling an applicant for retirement benefits to file a late appeal, for good cause shown, does not preclude the filing of such an appeal." (*Ibid.*)

This brings us to *Gonzales,* in which a Youth Authority counselor sought an administrative appeal of his dismissal. Under Government Code section 19575, he had 20 days to file his appeal, but it was not filed until the 26th day. The superior court found the failure to timely file was the result of excusable neglect and issued a writ of mandate directing the California State Personnel Board to hear the appeal. The reviewing court affirmed, stating:

"Although it is true that no statute or case law has yet decided, as was the case in *Faulkner,* that the statutory scheme should be interpreted liberally in favor of an employee, we deal here, as in *Faulkner,* with a fundamental and vested right. We understand the concern of an employer to know whether or not an employee has been lawfully terminated, so that proceedings to replace that employee may be instituted. Where the delay in filing is long delayed [*sic*] and the employing unit can show that it has, in fact, replaced the employee, a reason for denying equitable relief may exist. However, in the case at bench, the delay in filing the notice of appeal was only six days and the employer made no attempt to show that a replacement had been hired within that brief period. We conclude that a reasonable reconciliation between the rights of the employee and the employer requires that, where good cause is shown for a brief delay and no prejudice to the employer is shown, relief from the default should be given." (*Gonzales* v. *State Personnel Bd., supra,* 76 Cal.App.3d 364, 367.)

*Gibson, Faulkner,* and *Gonzales* are all based on statutory construction. In *Gibson,* the issue was the meaning of an express good cause provision. In *Faulkner* and *Gonzales,* there were no express good cause provisions but the existence of a good cause exception was held to be implicit in the statutory scheme. In reaching this conclusion, *Faulkner* relied on a provision which indicated a policy of flexibility and on an established judicial rule of liberal construction, whereas *Gonzales* relied primarily on the existence of a fundamental vested right.

In the present case, there is no express good cause provision, no provisions indicating a policy of flexibility, no established rule of liberal construction, and no fundamental vested right. Although a permanent employee's right to continued employment is generally regarded as fundamental and vested, an employee enjoys no similar right to continuation in a particular job assignment. (Cf. *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 623-626 [139 Cal.Rptr. 603, 566 P.2d 237].)

In the absence of these factors relied upon in previous cases, we are aware of no principle of statutory construction which would permit us to find an implied good cause exception to the time limit established by rule X.

Reaching a contrary conclusion, the trial court reasoned: "Respondents argue that *Gonzales, supra,* involved a fundamental vested right and that such a right is not jeopardized here. Assuming that it is not, Government Code sections 3303 and 3304 provide for administrative appeals in *all* disciplinary actions including dismissals and transfers of the type alleged to have occurred here. The Legislature has recognized the same rights in all such cases. It follows that the same rights to relief from default should be available regardless of the nature of the alleged discipline imposed." (Original italics.)

We respectfully disagree with this reasoning. Section 3304 of the Government Code guarantees only "an opportunity for administrative appeal." It does not require the same opportunity regardless of the kind of disciplinary action imposed, nor does it prescribe the time limits within which application for administrative appeal must be made. Rather, the Legislature has left all such matters to be determined by the entities employing the public safety officers. The County of San Bernardino, through its personnel rules, has established a time limit which applies only to transfers and not to dismissals. It is this rule, and this rule only, which must be construed. Because a transfer, unlike a dismissal, does not involve a fundamental vested right, *Gonzales* is distinguishable and does not provide support for the trial court's ruling. We find no grounds for departing from the plain language of rule X. As the commission correctly concluded, rule X does not permit consideration of untimely requests for review on a showing of good cause.

The judgment is reversed and the cause is remanded with directions to deny the petition.

McDaniel, J., concurred.

**MORRIS, P. J.**—I respectfully dissent.

I would affirm the judgment granting the peremptory writ of mandate for the reasons stated by the trial court in its notice of ruling.

The majority interprets *Gonzales* too narrowly. The rationale of that decision is not limited to cases involving a vested right. Although the court noted that the case involved a fundamental vested right, the conclusion applies with equal force to other significant rights of the employee. The court

concluded that "a reasonable reconciliation between the rights of the employee and the employer requires that, where good cause is shown for a brief delay and no prejudice to the employer is shown, relief from default should be given." (*Gonzales* v. *State Personnel Bd.* (1976) 76 Cal.App.3d 364 at p. 367 [142 Cal.Rptr. 787].)

Although the right of an employee to appeal from "a transfer for purposes of punishment" may not be as fundamental as the right to appeal from a dismissal, it is also true that the possibility of prejudice to the employer as a result of the delay is likely to be less.

I agree with the trial court that in providing for administrative investigations, interrogations and appeals, Government Code sections 3303 and 3304 make no distinction between the various kinds of disciplinary actions. The trial court's reasoning is sound, where the Legislature has recognized the same rights to an administrative hearing "[i]t follows that the same rights to relief from default should be available regardless of the nature of the alleged discipline imposed."

Respondent's petition for a hearing by the Supreme Court was denied January 6, 1984. Bird, C. J., was of the opinion that the petition should be granted.