Filed 3/20/15  Sviridov v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEXEI E. SVIRIDOV,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO et al.,<br><br>    Defendants and Appellants. | D064634<br><br><br>(Super. Ct. No. 37-2008-<br> 00080855-CU-WT-CTL) |

APPEALS from a judgment of the Superior Court of San Diego County, Steven R. Denton, Judge.  Reversed with directions.

Jan I. Goldsmith, City Attorney, Daniel F. Bamberg, Assistant City Attorney, Joe B. Cordileone, Chief Deputy City Attorney for Defendants and Appellants.

Milton J. Silverman for Plaintiff and Appellant.

Defendants and appellants City of San Diego (City) and the San Diego Police Department (Department) appeal from a judgment following a bench trial on Alexei E. Sviridov's fourth amended complaint seeking relief under the Public Safety Officers

Procedural Bill of Rights Act (POBRA, or at times, the Act; Govt. Code,[1] § 3300 et seq.). In part, the judgment reinstated Sviridov's employment as a Police Officer II in Department effective October 20, 2008, and awarded Sviridov back pay and benefits. Defendants challenge the judgment and the trial court's legal and factual findings on various grounds, including that Sviridov did not perfect his POBRA claim by requesting a hearing before the proper entity, the Act did not apply because Sviridov was not available to participate in a POBRA hearing; and Sviridov's requests to the court and Civil Service Commission (the Commission) did not trigger defendants' obligations under the Act. They further contend the court abused its discretion by ordering back pay because such a remedy was prohibited by *Coleman v. Department of Personnel* (1991) 52 Cal.3d 1102 (*Coleman*) and the law of the case doctrine. Defendants argue that under de novo review, this court must conclude Sviridov waived his right to a POBRA hearing, he did not present evidence to support a POBRA claim, his POBRA claim is untimely, and he is not entitled to money damages.

Sviridov cross-appeals. He contends the trial court erred by finding defendants did not act with malice, because he was denied the opportunity to present evidence of malice. He asks this court to affirm the judgment reinstating him and ordering payment of wages and lost benefits, but remand the case to the trial court to reverse its finding as to malice, and also clarify the court's authority to award statutory penalties, attorney fees and actual damages under the POBRA.

---

[1]     Statutory references are to the Government Code unless otherwise specified.

2

On this record, there is no factual or legal basis for the trial court's finding that Sviridov's actions triggered defendant's POBRA obligations, or that defendants failed to afford Sviridov required procedural protections under the POBRA. Because Sviridov did not establish he was entitled to POBRA relief, the court should have granted defendants' motion for judgment under section 631.8. In the absence of evidence of any POBRA violation, there was no basis for the court to find Department or City acted with malice. We reverse the judgment and direct the trial court to enter judgment in defendants' favor on Sviridov's fourth amended complaint.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal follows two prior appeals in this court, *Sviridov v. San Diego City Civil Service Commission* (Nov. 22, 2010, D055109 [nonpub. opn.] (*Sviridov I*)) and *Sviridov v. City of San Diego* (Oct. 13, 2011, D056801 [nonpub. opn.] (*Sviridov II*)).[2] Our first opinion recounted the background pertaining to Sviridov's November 2007 termination of his employment as a police officer, his October 2008 reinstatement and payment of back pay and benefits, Sviridov's failure to return to work thereafter, and his second October 2008 termination, all basic facts that were undisputed in the bench trial at issue on this appeal. Sviridov's second appeal involved defendants' demurrer and motion for summary judgment on Sviridov's August 2009 third amended complaint asserting claims against City and Department for, inter alia, wrongful termination stemming from

_____

2    On our own motion, we take judicial notice of our prior unpublished appellate opinions and appellate records in these matters. (Evid. Code, §§ 452, subd. (d), 459; Cal. Rules of Court, rule 8.1115(b)(1); *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171-1173.)

his second termination. We affirmed the summary judgment but reversed the trial court's order sustaining defendants' demurrer to Sviridov's ninth breach of contract cause of action and remanded the matter with directions that the court grant Sviridov leave to amend his complaint to state a cause of action under the POBRA and/or to seek appropriate mandamus relief. (*Sviridov II*, *supra*, D056801.)

Following remand, Sviridov filed a fourth amended complaint seeking relief under the POBRA without pursuing a writ of mandate.[3] He alleged defendants violated the POBRA in part because "Sviridov was not provided with the opportunity to present his side at a hearing 'conducted by a neutral factfinder' and 'open to the public' and failed to provide due process as required by the Constitution and POBRA." Sviridov alleged: "Sviridov is **not** asking this Court to order [Department] or . . . [the Commission] to perform a mandatory duty . . . . [¶] Sviridov is asking the Court to find POBRA was violated, find Sviridov's termination was unlawful, find the time in which the Department had to do the things required by POBRA has passed, find Sviridov's termination null and void, and order the relief requested in this complaint." Among other relief, Sviridov

---

[3] Sviridov alleged that his success on his POBRA allegations eliminated the need to seek mandamus to compel the Commission to hear his appeal "because if the court finds Sviridov was not lawfully terminated and the time to lawfully terminate him has long ago elapsed, that is the end of the matter, and there is nothing to appeal." Sviridov "reserve[d] the right to file a mandamus action" which he alleged was at the time "premature and unnecessary." On the first day of trial, Sviridov's counsel stated: "[W]e have reviewed the Court of Appeal's decision, and we have decided that we want to pursue only [Sviridov's] rights under POBRA, and we are not seeking relief under the alternative, the administrative mandamus that the court referred to in—in its opinion, which as I cite in the case law in the proposed decision, is a right that Mr. Sviridov has the right to choose which or either or both that he chooses to pursue."

4

sought findings that his termination was without cause, unjustified and unwarranted and that defendants violated due process and the POBRA. He sought orders, among others, that he be restored to his former position with back pay and benefits, that defendants pay actual damages and attorney fees, and that they pay a $25,000 fine for each POBRA violation.

After some procedural maneuverings, the matter proceeded to trial, and the court granted Sviridov's motion to bifurcate issues, ruling "[t]he initial phase of trial will address whether the October[] 2008 separation from employment constitutes a termination or resignation for purposes of applying the POBRA provisions. The second phase will address all remaining issues (if any). . . . Plaintiff sufficiently demonstrates that bifurcation will promote economy and efficiency because the initial termination or resignation determination is a threshold issue on which the alleged POBRA violation is premised." The parties' joint pretrial conference report stated that Sviridov interpreted the first phase as covering the question of "[w]hether on or about October 17, 2008, [Sviridov] was fired by [defendants] . . . or whether he resigned . . . ." Trial was set for March 2013.

On the day set for trial, defendants moved for judgment on the pleadings. They argued the fourth amended complaint failed to state facts sufficient to state a cause of action under the POBRA because Sviridov did not file a timely appeal with the office of the chief of police as required by a memorandum of understanding (MOU) between Department and the Police Officers' Association (POA), he did not obtain approval from

5

the POA board as an alternative to that requirement, and he did not allege the MOU's remedies were inadequate.

At trial, in addition to his own testimony, Sviridov presented the testimony of former Assistant Chief of Police Boyd Long, and Sviridov's attorneys in the proceedings, Robert Geile and Milton Silverman. Defendants presented additional testimony from Assistant Chief Long.

On the third day of trial, after Sviridov had testified, defendants moved for judgment under Code of Civil Procedure section 631.8. They argued Sviridov's POBRA claim was barred by laches and his trial testimony showed he remained "unavailable" within the meaning of the POBRA, warranting judgment in their favor.

In May 2013, the trial court issued a detailed and lengthy proposed statement of decision, which included its rulings as to defendants' motions for judgment and judgment on the pleadings. It found Sviridov's conduct was not in fact treated by Department as a resignation by job abandonment, but that "[t]he evidence before the Court demonstrates that the Department considered [Sviridov] to have been terminated and attached to that termination the stigma associated with a punitive termination." The court relied on personnel records characterizing the end of Sviridov's employment as a "termination" or "discharge," together with exhibits—a supervisor's employee separation reporting form and a "No Hire" letter referring to Sviridov's departure as a termination—to rule that Sviridov was terminated.

The court further found that Department had not afforded Sviridov his POBRA rights; that "Department in its initial communications to [Sviridov] partially, but not

6

completely, complied with its POBRA duties to effectuate a termination of employment through the AWOL regulation. It found Department had "investigated" within the meaning of the POBRA in that Assistant Chief Long had conducted inquiries into whether Sviridov was complying with Department's orders to report to work and discovered that Sviridov was not. It found Department met its burden to give Sviridov notice that Department was considering imposing some discipline by three October 2008 letters from Department's Director of Administrative Services Patrick Drummy (trial exhibits N, Q and R) stating that Sviridov's repeated failures to return to work would cause Department to process his resignation and terminate his employment. The court found that after that point, however, Department did not afford Sviridov all of the procedural notifications, information, review and hearings required by Department procedures so as to accomplish a disciplinary action, but instead "proceeded as quickly as possible to cause [his] removal in the face of several requests that . . . he be provided with a hearing before he was terminated from employment." The court determined it was Department's responsibility to afford Sviridov his POBRA rights before accomplishing his termination, and "[Sviridov's] demands for hearings before the trial Court and the . . . Commission in connection with the Department's proposed termination of [Sviridov] were sufficient to trigger the City's obligations under POBRA."

The court ordered Sviridov reinstated forthwith under the October 2008 terms set out by the Commission, and that he be provided his pay and benefits to the date of the order. The court further found that "the actions of the Department did not constitute malicious conduct." It denied Department's motions for judgment on the pleadings and

7

for judgment "[f]or the reasons set forth above." The court found "none of the Defendants' Affirmative Defenses have merit so as to bar Plaintiff's action asserting POBRA rights, reinstatement and orders made herein." It declined Sviridov's requests for relief "beyond that stated above."

Defendants objected to the proposed statement of decision and asked the court to make numerous additional findings of fact and conclusions of law. The court overruled the objections and adopted its statement of decision as drafted.[4] It later entered judgment incorporating its findings and ordered Sviridov be "reinstated forthwith as a Police Office[r] II in the San Diego Police Department, effective October 20, 2008"; Sviridov "shall be paid his back pay and benefits with interest accrued thereon, if any, as the court shall determine"; and Sviridov be awarded $870 in costs as the prevailing party.

Defendants appeal from the judgment. Sviridov cross-appeals.

---

[4] In their opening brief, defendants do not address the effect, if any, of their objections on our appellate review. " ' "The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." ' " (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.) The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case. (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.) Though defendants objected to both the legal and factual bases of the trial court's decision, they have not given us any basis to conclude the statement of decision did not sufficiently address the ultimate facts and material issues. Accordingly, we imply findings to support the judgment where appropriate. (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292, quoting *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

8

DISCUSSION

I. *Standard of Review*

" ' "In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.] In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment." ' " (*Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) "However, when the [trial court's findings of] decisive facts are undisputed, the reviewing court is confronted with a question of law and is not bound by the findings of the trial court. [Citation.] In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law." (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)

Our review is the same for defendants' motion for judgment under Code of Civil Procedure section 631.8: "Under [Code of Civil Procedure] section 631.8, in a bench trial, a party may move for judgment after the other party has completed his or her presentation of evidence. [Citation.] In considering such a motion, the court 'shall weigh the evidence and may render a judgment in favor of the moving party . . . .' [Citation.]

9

'In weighing the evidence, the court may exercise the prerogatives of a fact trier by refusing to believe witnesses and by drawing conclusions at odds with expert opinion.' [Citation.]  [¶]  On appeal '[w]e resolve all evidentiary conflicts in favor of the prevailing parties, and indulge all reasonable inferences possible to uphold the trial court's findings. [Citation.]  . . .  This court is without power to substitute its deductions for those of the trial court when the trial court could reasonably deduce two or more inferences from the facts.' " (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 731, italics omitted; see *Fink v. Shemtov*, *supra*, 210 Cal.App.4th at p. 608.)  " '[T]he power of the reviewing court begins and ends with the determination as to whether, on the whole record, there is substantial evidence, contradicted or uncontradicted, that will support the trial court's determination.' " (*Eriksson*, at p. 732, quoting *San Diego Metropolitan Transit Development Broker-Dealer v. Handlery Hotel, Inc.*, *supra*, 73 Cal.App.4th at p. 528.)

Where the claim on appeal involves only issues of law pertaining to application of the Act, our review is de novo.  (*Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 380.)  If the questions turn on an interpretation of the Act, our review is likewise de novo.  (See *Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393, 1400; *Shafer v. County of Los Angeles Sheriff's Dept.* (2003) 106 Cal.App.4th 1388, 1396.)  " 'In determining the scope of coverage under the . . . Act, we independently determine the proper interpretation of the statute and are not bound by the lower court's interpretation.' " (*James v. City of Coronado* (2003) 106 Cal.App.4th 905, 909; see also *Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

10

II. *Sviridov was Limited to Pleading and Proving Relief under Section 3309.5*

Our disposition in *Sviridov II* directed the court to grant Sviridov leave to amend to state a cause of action for relief under the POBRA or to seek a writ of mandate. Our disposition is law of the case and binding upon the parties and the trial court. (*Lucky United Properties Investment, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 651.) After Sviridov elected to forego a writ of mandate, his sole course of action following remand was to attempt to plead and prove a POBRA violation so as to justify relief under section 3309.5, nothing more. (Accord, *Benefield v. Department of Corrections & Rehabilitation* (2009) 171 Cal.App.4th 469, 477 [writ petition premised solely on POBRA violations does not permit relief for non-POBRA due process violations].) To the extent Sviridov sought to plead and prove general, non-POBRA, due process violations, the trial court properly denied such relief.

III. *Department's October 2008 Termination Decision was Timely and Met POBRA's*

*Notice Requirements*

In his combined respondent's and cross-appellant's brief, Sviridov advances cursory challenges to Department's termination decision; he maintains the trial court erred by finding Department's October 2008 letters satisfied POBRA notice requirements and that the court should have found Department did not meet the POBRA one-year limitations period. Other than arguing it would have been "impossible" for Department to meet the one-year limitations period, Sviridov does not explain his contention. As for Department's purported failure to meet requirements for a notice of adverse action, Sviridov provides no authority for his assertion other than the San Diego Municipal

11

Code.  As we will explain, Sviridov's challenges are without merit; the court did not err and its findings are supported by substantial evidence.

The POBRA, specifically section 3304, subdivision (d), creates a statute of limitations for punitive actions.  Under that section as it provided in 2008, " 'no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct.  . . .  In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year.' " (*Moore v. City of Los Angeles*, *supra*, 156 Cal.App.4th at p. 381; see also *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 320.)

" '[U]nder the plain language of section 3304[, subdivision] (d),' if an employer desires to discipline a public safety officer, 'it must complete the investigation into the misconduct within one year of the discovery of the misconduct by a person authorized to start an investigation into the conduct.' [Citation.]  If the employer determines that discipline may be taken, 'then it must give the officer notice of the "proposed disciplinary action" during that same one-year time frame.' [Citation.]  When the employer decides to impose discipline, 'then it must notify the public safety officer in writing of its decision to impose discipline [citation].' " (*Moore v. City of Los Angeles*, *supra*, 156 Cal.App.4th at p. 381.)  "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety

12

officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline." (§ 3304, subd. (f).)

Sviridov does not challenge the court's finding that Assistant Chief Long was a "person authorized to initiate an investigation" into the conduct within the meaning of section 3304, subdivision (d). At trial, Assistant Chief Long testified that in October 2008, Department sent or hand-delivered to Sviridov at least three certified letters ordering him to return to his position at Department or be subject to disciplinary action, but that Sviridov did not respond to the letters by either calling Department or reporting to work. Assistant Chief Long testified: "[Sviridov] was directed to make that call [to return to work]. And I don't remember exactly who, but I followed up to see if he had actually made the phone call or had arranged to come in to work, and that's one of the things I was tracking along to see if he did come back to work." Assistant Chief Long testified that on October 20, 2008, Department sent another letter to Sviridov reminding him that he had previously been ordered back to work and notified that his failure to do so would result in his termination, and that he was terminated effective October 18, 2008.

The trial court found Assistant Chief Long had discovered Sviridov was failing to report to work after being ordered to do so, Long simultaneously "investigated" those acts, and Department gave notice of its action—its intent to process Sviridov's resignation and terminate his employment—in the October 2008 letters, all of which occurred within a very short time frame. Though Sviridov does not squarely challenge the specificity of those letters, the version of the POBRA in effect at the time Sviridov received those

13

letters did not require that a notice of proposed discipline identify the level of discipline. (*Benefield v. Department of Corrections & Rehabilitation*, *supra*, 171 Cal.App.4th at p. 477, fn. 12, citing *Mays v. City of Los Angeles*, *supra*, 43 Cal.4th at pp. 320-324.)[5] Sviridov also suggests that Department was required to send a "notice of adverse action" containing information about "what he has been accused of having done, the results of the investigation, the proposed discipline, and the time and place for a pre-termination *Skelly* hearing." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).) The assertion is meritless, as " 'section 3304[, subdivision ](d) does not suggest any invocation of th[e] formal civil service process' " but rather "lies outside the state civil service system." (*Earl v. State Personnel Board* (2014) 231 Cal.App.4th 459, 467, see also *Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 28-29.) " '[A]ll section 3304[, subdivision ](d) requires is that the agency "notify the public safety officer of its proposed disciplinary action within that year." ' " (*Earl v. State Personnel Board*, at p. 468.)

Substantial evidence supports the court's finding that Department completed its investigation and sufficiently notified Sviridov of its proposed discipline within the

---

5        Subdivision (d) of section 3304 was amended effective January 1, 2010, to legislatively overrule the holding of *Mays v. City of Los Angeles*, *supra*, 43 Cal.4th at p. 322, that subdivision (d) did not require " 'notification of the specific discipline contemplated by the public agency.' " (See *Neves v. California Dept. of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61, 68, fn. 3.) The amendment does not apply to the letters given to Sviridov in October 2008, but even if it did, they would have complied with the amended version of the statute because they notified Sviridov that Department would process his resignation if he did not return to work and finally that his employment would be terminated immediately if he did not do so.

14

POBRA one-year limitations period from the time it discovered Sviridov had disobeyed Department's orders to return to work.

IV. *The POBRA Requires Only that Department Provide Sviridov an Opportunity for an Appeal; The Court's Finding that Department Did Not Comply with that Requirement is Unsupported by Any Evidence*

The "POBRA was enacted to 'maintain stable employer-employee relations and thereby assure effective law enforcement.' " (*Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 141.) It " 'sets forth a number of basic rights and protections which must be accorded individual public safety officers *by the public agencies which employ them*.' [Citation.] Included is the right to administratively appeal an adverse employment decision, 'to give a peace officer "an opportunity . . . 'to convince the employing agency to reverse its decision' " to take punitive action.' " [Citations.] The Legislature declared that 'effective law enforcement depends upon the maintenance of stable . . . relations, between public safety employees and their employers,' and that basic protections for officers were necessary to preserve that stability." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 639, italics added; see also *Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1029-1030.) Thus, section 3309.5 makes it "unlawful for any *public safety department* to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." (§ 3309.5, subd. (a), italics added.)

"One of the protections of the act is the speedy adjudication of punitive actions against public safety officers. [Citation.] Under section 3304, subdivision (b), no

15

punitive action or denial of promotion except on merit may be taken against a public safety official who has successfully completed probation 'without providing the public safety officer with an opportunity for an administrative appeal.' " (*Moore v. City of Los Angeles*, *supra*, 156 Cal.App.4th at p. 381.) "The limited purpose of an administrative appeal under section 3304 is to give the peace officer subjected to punitive action an opportunity 'to establish a formal record of the circumstance surrounding his termination' [citation] and 'to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances.' " (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806.)

Importantly, "[s]ection 3304, subdivision (b) ' "does not provide for an automatic administrative appeal, but merely requires that an *opportunity* for such an appeal be provided . . . . [T]he procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency." ' " (*James v. City of Coronado*, *supra*, 106 Cal.App.4th at pp. 909-910; see also *Mays v. City of Los Angeles*, *supra*, 43 Cal.4th at p. 322.) Indeed, section 3304.5 is mandatory on that point: "An administrative appeal instituted by a public safety officer under this chapter *shall* be conducted in conformance with rules and procedures adopted by the local public agency." (§ 3304.5, italics added; see also § 3310.[6])

---

6    Section 3310 provides: "Any public agency which has adopted, through action of its governing body or its official designee, any procedure which at a minimum provides to peace officers the same rights or protections as provided pursuant to this chapter shall

16

The trial court received the governing MOU between Department and the POA into evidence at trial. Article 41 of the MOU describes an officer's POBRA rights. In part, the MOU states: "Officers may, with the approval of the POA Board of Directors, bring an action in Superior Court without exhausting the administrative remedies described in this Article, in those instances where it is alleged that a specific violation of the [POBRA] has occurred and it is alleged that the remedies contained in this Article are inadequate."

Under the MOU, "hearings regarding punitive actions shall be conducted as follows: [¶] . . . [¶] Each officer requesting to appeal a matter shall have ten (10) working days to file an appeal with the office of the Chief of Police. [¶] . . . [¶] . . . The officer shall have the right to present evidence, cross-examine witnesses and require the attendance of any witnesses who are city employees. [¶] . . . At the conclusion of the hearing the hearing officer shall render a written decision which shall state the facts found to be true and the decision of the hearing officer based upon those facts."

A. *There is No Evidence that Department Denied Sviridov an Opportunity for an MOU Appeal Hearing*

As to Department's purported POBRA violations, the court made the following factual and legal findings: "Department failed to afford [Sviridov] all of the procedural

---

not be subject to this chapter with regard to such a procedure." (See *Browning v. Block* (1985) 175 Cal.App.3d 423, 429 [under section 3310, "any public agency which adopts any procedure which, at a minimum, provides peace officers with the same rights or protections provided by the Peace Officers Bill of Rights . . . is not subject to the provisions of the act with respect to such procedure"].)

17

notifications, information, review and hearings that the Department procedures required in order to accomplish a disciplinary action including termination. It simply failed to follow its own rules and procedures in order to quickly accomplish what turned out to be a disciplinary termination. The Department proceeded as quickly as possible to cause [Sviridov's] removal in the face of several requests that . . . he be provided with a hearing before he was terminated from employment."

The court further found "it was the fundamental responsibility of Defendant to afford [Sviridov] his POBRA rights prior to accomplishing his termination" and "[Sviridov's] demands for hearings before the trial Court and [the] Commission in connection with the Department's proposed termination of [Sviridov] were sufficient to trigger the City's obligations under POBRA."

The trial court did not provide any further details on these findings, nor did it specify the legal basis for its ruling that Sviridov's requests to entities other than Department constituted a demand for POBRA rights and protections that Department ignored. Having reviewed the record, we conclude the court's findings are without factual support, and its conclusions without legal basis.

First, there is no evidence in this record that Sviridov complied with the governing MOU procedures by filing a request for an MOU appeal hearing in the office of the police chief within 10 working days after his October 18, 2008 termination. Indeed, the trial court expressly found no such request was made: that as the Department's October 2008 letters were being sent ordering Sviridov to return to work, Sviridov "continued unsuccessfully to attempt to have the Court intercede. *While no specific request for*

18

*hearing for violation of POBRA rights was made*, [Sviridov] was certainly requesting the Court to halt the termination process and permit [him] to assert legal rights." (Italics added.) Neither party challenges the finding that Sviridov did not file any such request, timely or untimely, with the office of the police chief. Yet, the trial evidence showed Sviridov was well aware of the requirement; Sviridov testified he had complied with the MOU and filed an appeal with the police chief in connection with his November 2007 termination.

Because Department was not faced with any request for an MOU appeal hearing in connection with its October 2008 decision, there can be no finding that Department denied or refused such a hearing. As we have pointed out, under the POBRA, Department had no mandatory or automatic obligation to grant Sviridov an appeal hearing. (*James v. City of Coronado*, *supra*, 106 Cal.App.4th at pp. 909-910; *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111, 1120; *Browning v. Block*, *supra*, 175 Cal.App.3d at p. 429.) Rather, the MOU—which set out the rules and procedures applicable to an administrative appeal of any punitive action—required *Sviridov* to initiate an appeal. (*Browning*, at p. 429 [procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency].) And Sviridov has never advanced a claim that the MOU process was in some way inadequate or did not meet POBRA requirements.[7]

---

7    For these same reasons, the trial court should have granted defendants' motion for judgment on the pleadings on grounds Sviridov did not plead that he sought an MOU appeal hearing within 10 working days, he did not plead that the POBRA remedies set

19

Sviridov does not recount the particular evidence establishing Department's violation of its POBRA obligation to give Sviridov the opportunity for an MOU appeal. His arguments on this point begin with Department's compliance with POBRA notice requirements, which we have addressed (part III, *ante*) and upheld the trial court's findings in Department's favor. Sviridov next argues: "The rules and procedures in the Municipal Code, SDPD Manual, and the [MOU] are consistent with each other and comply with the due process pre-termination and post-termination requirements for employees who have vested property rights. They are also consistent with POBRA."[8] Sviridov further states: "A permanent employee has a right to pre-termination due process, commonly called a *Skelly* hearing." Finally, Sviridov argues: "In cases where stigma is associated with the employee's departure, the employee is entitled to both pre-termination and post-termination due process. The Fourteenth Amendment requires that

forth in the MOU were inadequate, and he did not plead he had obtained approval from the POA board of directors to bypass those MOU appeal procedures and seek relief directly from the superior court.

[8] In a footnote at this point, Sviridov cites to *Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899 and asserts "[i]n the event of a conflict, POBRA takes precedence over local rules and ordinances because it was enacted by the legislature to address matters of statewide concern." *Jackson* involved a dispute over which statute of limitations applied to disciplinary action against an officer taken by a charter city: whether it was the POBRA one-year limitations period, or the limitations period in the city's charter. (*Id*. at p. 904.) The *Jackson* court held that "[i]n matters of statewide concern . . . , applicable general state laws govern charter cities regardless of their charter provisions." (*Id*. at p. 906.) It pointed out the Act applied to all public safety officers in the state of California, and given that the city police officers met that definition, the rights and protections provided to peace officers in the Act constituted a matter of statewide concern. (*Ibid*.) We fail to see how *Jackson* pertains to the question presented here, and Sviridov does not explain how it compels a conclusion that defendants denied him POBRA rights and protections.

'[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' "

Sviridov's assertions as to *Skelly* due process rights and general Fourth Amendment rights to a notice and opportunity for hearing under state civil service laws are unavailing. First, civil service rules are entirely independent of POBRA. (See *Earl v. State Personnel Board*, *supra*, 231 Cal.App.4th at p. 463 [peace officers "are subject to an entirely separate statute," namely the POBRA]; *Benefield v. Department of Corrections & Rehabilitation*, *supra*, 171 Cal.App.4th at p. 477, fn. 13 [POBRA requirements and civil service rules are "distinct statutory requirements"].) And, by abandoning a petition for a writ of mandamus, Sviridov forfeited his right or ability to compel City and Department to comply with non-POBRA obligations to provide hearings under *Skelly* or any other due process scheme. The specific question at trial was whether Sviridov could establish a POBRA violation and obtain appropriate relief under POBRA, not any other due process violation under civil service rules or any other scheme. In sum, Sviridov arguments and assertions do not explain how the record establishes a violation of section 3304's requirement that Department provide an opportunity for an administrative appeal.

B. *Sviridov's Other Actions Cannot Be Construed as a Demand for POBRA Relief that Department Ignored*

The record otherwise provides no basis to uphold the trial court's factual and legal findings as POBRA noncompliance. While Sviridov did take steps shortly before and after his second termination in an effort to obtain some review of Department's action,

21

none of those actions can be construed as a demand for a MOU appeal hearing of his pending or completed termination. As we will explain, nothing in those actions compelled Department to grant him an MOU appeal hearing or triggered any other POBRA obligation.

The trial evidence shows that on October 7, 2008, while Department was ordering Sviridov to report to work, Sviridov filed an ex parte application for a temporary restraining order (TRO) and order to show cause for a preliminary injunction. In his ex parte request for a TRO, Sviridov asked the court to enjoin City and Department "from demanding that [he] report for work as a police officer until such time as a court adjudicates [Sviridov's] petition for writ of administrative mandamus and/or writ of prohibition." (Some capitalization omitted.) Sviridov's petition for writ of administrative mandamus and/or prohibition—filed on the same day as his ex parte TRO request—was against the *Commission*, seeking "redress of violations of law *committed by the . . . San Diego City Civil Service Commission*."[9] (Italics added.) On October 21, 2008, Sviridov's attorney again demanded a hearing before the *Commission*, not an MOU appeal hearing.

Sviridov did not—either before or after Department's October 2008 termination decision—petition for a writ of mandate to direct *Department* to process any request for

---

9 Sviridov challenged the Commission's decision to reinstate his employment without holding a hearing on the merits, and sought to have the Commission comply with San Diego Municipal Code requirements to grant him a hearing concerning his *November 2007 termination*. In *Sviridov I*, this court addressed Sviridov's writ petition and upheld the trial court's denial of that petition. (*Sviridov I, supra*, D055109; see also *Sviridov II, supra*, D056801 [summarizing holding in *Sviridov I*].)

22

an MOU appeal under the POBRA. (Compare, *Riverside Sheriffs' Assn. v. County of Riverside* (2011) 193 Cal.App.4th 20, 26 [after a county terminated plaintiff probation corrections officer's employment then rescinded her termination without paying accrued wages or benefits and refused her request for an MOU appeal hearing, plaintiff filed petition for writ of mandate to compel the county to process her request for an MOU appeal of her termination; Court of Appeal upheld trial court's grant of petition on grounds she was entitled to an MOU appeal of county's disciplinary action in denying her the wages and other benefits of employment]; *Riverside Sheriffs' Assn. v. County of Riverside* (2009) 173 Cal.App.4th 1410, 1416-1417 [appellate court held the trial court erred by rejecting an investigator's claim for POBRA relief, as "[t]he county's rejection of [her] request for an MOU appeal hearing constituted a violation of POBRA"].)

Evidence that Sviridov sought relief in the superior court to stop Department from proceeding with his termination, or sought relief by way of mandate for asserted violations of the San Diego Municipal Code by the Commission, is irrelevant to plaintiff's POBRA claim. The Commission was not governed by the POBRA: "It shall be unlawful for any *public safety department* to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." (§ 3309.5, subd. (a), emphasis added; see also *id.*, subd. (e) ["upon a finding by a superior court that a *public safety department, its employees, agents, or assigns,* with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the *public safety department* shall . . . be liable . . . ." (Italics added.) We perceive no legal basis to conclude that Sviridov's

23

unrelated requests for relief triggered Department's obligation to grant him an MOU hearing.

In sum, the record is absent evidence that either City or Department refused any other action taken by Sviridov that can be construed as a request for an MOU appeal hearing under the provisions of the POBRA. Because the trial court's findings to the contrary are unsupported by any factual or legal basis, we reverse the judgment.

V. *Sviridov's Evidentiary Motions*

A. *Motion to Consider Additional Evidence under Code of Civil Procedure Section 909*

Sviridov moves this court to take additional evidence under Code of Civil Procedure section 909 of various documents, specifically: (1) two August 2013 letters from Sviridov to former San Diego Chief of Police William Landsdowne; (2) a certified transcript of the oral argument in *Sviridov II*; (3) an article from the October 2014 edition of San Diego Magazine; (4) articles from the January 16, 2013 and February 25, 2014 editions of the San Diego Union Tribune; (5) a City news release; and (6) a December 19, 2008 agenda of the San Diego City Employees' Retirement System Board of Administration. Sviridov's sole basis for his request as to all documents except the certified transcript is to rebut defendants' factual argument, made in their reply brief, that Sviridov remains unavailable to resume [his] job "to this very day." As for the oral argument transcript, Sviridov argues it "contains prior statements and representations made to this Court by the City . . . regarding the subject matter and issues presented in the instant appeal." Defendants object to the motion on grounds the material is not evidence, each document is hearsay, and most came into being after Sviridov rested his case at trial.

24

" '[A]n appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made*.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; see also *In re Valerie W.* (2008) 162 Cal.App.4th 1, 9.)

Sviridov's showing does not present exceptional circumstances warranting our consideration of his proffered documents as new evidence. He asks us to "revisit what are essentially substantive evidence issues with new evidence and make new factual determinations—a task that is better suited for the trial court than for an appellate court." (*In re Valerie W.*, *supra*, 162 Cal.App.4th at p. 9.) Merely seeking to rebut defendants' factual argument in a reply brief does not constitute exceptional circumstances. (Accord, *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [request for a factual determination under Code of Civil Procedure section 909 to add documents not before the trial court in order to rebut factual claims concerning content of franchise agreements did not constitute exceptional circumstances]; compare *Reserve Insurance*

25

*Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [courts consider postjudgment events such as legislative changes, events that render an issue to become moot, or undisputed facts that do not usurp the fact-finding function of the trial court and avoid repetitive litigation of fully briefed issues].)  As to the certified transcript, Sviridov's mere assertion that it contains City's statements as to the "subject matter and issues" of this appeal is too broad and vague to demonstrate exceptional circumstances.  Under the circumstances, we deny Sviridov's motion.

B.  *Request for Judicial Notice*

Sviridov has also requested that we take judicial notice of City and Department's respondents' brief in *Sviridov II*.  While this brief is a judicially noticeable court record (Evid. Code, § 452, subd. (d) [judicial notice may be taken of records of any court of this state]), the truth of the statements therein are not subject to judicial notice.  (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 364-365; accord, *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 ["When judicial notice is taken of a document . . . the truthfulness and proper interpretation of the document are disputable"]; *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103-1104.)  Additionally, Sviridov's claim that the brief "contains prior statements and representations made to this Court by [City] regarding the subject matter and issues presented in the instant appeal" does not adequately demonstrate the pleading's relevance to the issues presented in this appeal.  We therefore deny Sviridov's request to take judicial notice of Exhibit MMM.

## VI.  *Sviridov's Cross-Appeal*

In the absence of evidence of any POBRA violation, there was no basis for the trial court to find either Department or City acted with malice in connection with any such violation.  Given our conclusion, we need not address Sviridov's arguments as to damages.  (*Los Angeles Police Protective League v. City of Los Angeles*, *supra*, 232 Cal.App.4th at p. 148, fn. 5 ["Because we hold respondents have not violated any provision of POBRA, we do not reach appellants' claim for damages under section 3309.5, subdivision (e)."].)  Accordingly, we reject Sviridov's claims in his cross-appeal.

## DISPOSITION

The judgment is reversed and the matter remanded with directions that the superior court enter judgment in favor of the City of San Diego and San Diego Police Department on Alexei E. Sviridov's fourth amended complaint.  City and Department shall recover their costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.


27